# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

№ 22-CV-00651 (DG) (RER)

———————————————

TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, AND THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE LOCAL 7 MARBLE INDUSTRY PENSION FUND, THE LOCAL 7 MARBLE INDUSTRY ANNUITY FUND, THE LOCAL 7 MARBLE INDUSTRY TRUST FUND, TRUSTEES OF THE MOSAIC AND TERRAZZO WELFARE, PENSION, ANNUITY, AND VACATION FUNDS, AND TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND,

Plaintiffs,

VERSUS

SAMFET MARBLE, INC. C/O S.A.M. SAMFET GROUP, NYC MARBLE ACQUISITIONS L.P., NYC ACQUISITIONS GP, INC., PORT MORRIS TILE & MARBLE BOSTON LP, GEORGES BERBERI, AND MATTHEW AUERBACH,

Defendants.

———————————————

**REPORT & RECOMMENDATION**

May 8, 2023

———————————————

**TO THE HONORABLE DIANE GUJARATI**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs are the trustees of multiemployer employee benefit funds, including the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, Tile Layers Local Union 52 Pension Fund (collectively, the "Local 7 Tile Funds"); the Marble Industry Pension Fund, Marble Industry Annuity Fund, the Local 7 Marble Industry Trust Fund (collectively, the "Local 7 Marble Funds");

1

the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds (the "Local 7 Terrazzo Funds"); and the Bricklayers & Trowel Trades International Pension Fund (the "International Fund") (the Local 7 Tile Funds, Local 7 Marble Funds, Local 7 Terrazzo Funds, and International Fund are collectively referred to as the "Funds" or "Plaintiffs"). The Funds commenced this action against Samfet Marble, Inc. c/o S.A.M. Samfet Group ("Samfet"), NYC Marble Acquisitions L.P. ("NYC Marble LP"), NYC Acquisitions GP, Inc. ("NYC Marble GP"), and Port Morris Tile & Marble Boston LP ("PMTM Boston," and, together with Samfet, NYC Marble LP, and NYC Marble GP, the "Corporate Defendants") and Georges Berberi ("Berberi") and Matthew Auerbach ("Auerbach") (collectively, the "Individual Defendants," and, together with the Corporate Defendants, "Defendants") on February 4, 2022, alleging claims under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132, 1145 ("ERISA"), and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"). (ECF No. 13 ("Am. Compl.") ¶ 1).[1] Currently before the Court is Defendants' Motion to Dismiss the Amended Complaint (the "Motion") (ECF No. 25 ("Def's Mot. to Dismiss)), which Your Honor has referred to me for a report and recommendation (Order dated 10/28/2022).

After carefully reviewing the record, and for the reasons set forth herein, I respectfully recommend that the motion be denied.

---

[1] On April 25, 2022, the Funds filed the Amended Complaint, in which the Funds withdrew the fraudulent conveyance claims previously alleged. (*See* Order dated 4/19/2022).

# BACKGROUND[2]

## I.    The Collection Action and Port Morris Tile & Marble LP's Bankruptcy

The Funds are trustees of multiemployer employee benefit funds organized and operated pursuant to various collective bargaining agreements of tile, marble, and terrazzo labor unions (the "CBAs"). (Am. Compl. ¶¶ 13–16). Pursuant to the CBAs, the Funds receive contributions from employers on behalf of their employees that perform tile, marble, and/or terrazzo work in New York and New Jersey. (ECF No. 27 ("Pl's Opp.") at 2). Port Morris Tile & Marble Corp. ("PMTM Corp.") and Port Morris Tile & Marble LP ("PMTM LP") were tile, marble, and terrazzo installers in New York and employers subject to the CBAs. (Am. Compl. ¶¶ 28, 33, 62). As such, PMTM Corp. and PMTM LP were required to remit contributions to the Funds at hourly rates specified in the CBAs for all work performed by PMTM Corp.'s and PMTM LP's employees. (*Id.* ¶ 62). Under the CBAs, if PMTM Corp. and PMTM LP did not "remit its required contributions to the Funds by the 15th day of the month following the month when the employer's employees performed [the work], then then employer is delinquent in its contribution obligation under the [] CBAs." (*Id.* ¶ 64).[3]

---

[2] The facts herein are drawn primarily from the operative pleading, the Amended Complaint (Am. Compl.), and "are taken as true for purposes of this motion." *Campos v. Aegis Realty Mgmt. Corp.*, No. 19 Civ. 2856 (KPF), 2020 WL 433356, at *1 (S.D.N.Y. Jan. 28, 2020) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court also recognizes the filings in (i) the Funds' first lawsuit to collect contributions, (ii) Port Morris Tile & Marble LP's Chapter 7 bankruptcy proceeding, and (iii) the Chapter 7 bankruptcy trustee's adversary proceeding, all of which are described in further detail throughout. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–75 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (holding that a Court may consider public records, such as complaints filed in state court, in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

[3] "If an employer . . . [such as] PMTM Corp. and PMTM LP[] is delinquent in its contributions to the Funds, then, pursuant to the Union CBAs and the Funds' Collection Policy, the Funds are entitled to payment of the unpaid contributions, interest on contributions owed to the Local 7 Funds at a rate of ten percent (10%) *per annum*, interest on contributions owed to the International Fund at fifteen percent (15%) *per annum*, liquidated damages equal to the greater of either the interest owed on the unpaid contributions or twenty percent (20%) of the unpaid contributions, the Funds' audit costs, and the Funds' attorneys' fees and costs incurred in obtaining these amounts from the delinquent employer." (Am. Compl. ¶ 65).

On March 10, 2020, the Funds filed a lawsuit in this District against PMTM Corp. and PMTM LP to recover allegedly delinquent contributions, interest, liquidated damages, and audit costs, plus reasonable attorneys' fees and costs. (*Trs. of Local 7 Tile Indus. Welfare Plan, et al. v. Port Morris Tile & Marble Corp., et al.*, No. 20-CV-1294 (ENV) (RER) (E.D.N.Y. Mar. 10, 2020) (the "Collection Action") ECF No. 1). Specifically, the Funds alleged that audits of PMTM Corp. and PMTM LP's books and records[4] revealed millions of dollars in delinquent benefit contributions. (*Id.* ¶¶ 24–28).

The Funds allege that on or around April 6, 2021, during the pendency of the Collection Action, the Individual Defendants in this action (the owners of PMTM LP and the Corporate Defendants), surreptitiously shifted the operations and assets of PMTM LP to one of the Corporate Defendants in a "sham transaction" intended to "frustrate the Funds' collection of benefit contributions." (Pl's Opp. at 3–4). The Funds specifically allege that

> Berberi and Auerbach used their complete control and domination over PMTM LP, NYC Marble GP, NYC Marble LP, PMTM Boston, and Samfet to avoid PMTM LP's obligations to Plaintiffs, by (1) shifting PMTM LP's receivables to Samfet in a transaction wherein Auerbach and Berberi represented both PMTM LP and Samfet and (2) shifting operations to regional affiliate PMTM Boston and to Samfet.

(Am. Compl. ¶ 88). As such, PMTM LP was rendered insolvent and devoid of any assets, leaving the Funds with no potential recovery. (*Id.* ¶ 90). In December 2021, PMTM LP filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. (*In re Port Morris Tile & Marble LP*, No. 21-12116 (MG) (Bankr. S.D.N.Y., Dec. 23, 2021) ("Bankr.

---

[4] Under the CBAs, "PMTM Corp. and PMTM LP must furnish the Funds, or their representatives, with its books and records available to allow the Funds to verify the number of hours of [work] performed by PMTM LP's employees and whether PMTM LP properly fulfilled its obligation under the [] CBAs to remit contributions to the Funds for those hours of [work]." (Am. Compl. ¶ 66).

Dkt.") ECF No. 1). That bankruptcy is still pending (*see* Bankr. Dkt.), and the Collection Action

is stayed (Collection Action Order dated 1/10/2022).

II.    <u>Ownership and Operation of the Port Morris Tile & Marble Entities</u>

The entities relevant to this action are part of a complex web of corporate structures that existed

prior to the Collection Action and PMTM LP's bankruptcy. Beginning in 2015, defendant Samfet

undertook negotiations to purchase PMTM Corp. (Am. Compl. ¶ 28). Samfet is a stone supplier

and constructions project management firm specializing in tile, marble, and terrazzo installation,

located and incorporated in Canada. (*Id.* ¶¶ 23, 17). Defendant Berberi has ownership interests in

Samfet and is its president and chief executive officer. (*Id.* ¶¶ 25–26). Defendant Auerbach is

Samfet's vice president. (*Id.* ¶ 27). Defendants NYC Marble LP and NYC Marble GP are Delaware

organizations that were formed by Samfet, Berberi, and Auerbach to facilitate Samfet's purchase

of PMTM Corp. (*Id.* ¶¶ 30, 28). In purchasing PMTM Corp., Samfet (through Berberi and

Auerbach) created NYC Marble GP and NYC Marble LP to act as owners of the purchasing entity,

PMTM LP.[5] (*Id.* ¶ 30). Then, PMTM LP acquired all assets of PMTM Corp. (*Id.* ¶ 31). The sale

finalized in 2018. (*Id.* ¶ 31).

Following the sale, Berberi and Auerbach allocated a portion of PMTM Corp.'s former assets

to an entity in Boston, Massachusetts, PMTM Boston, but left "the majority of said assets in New

York with PMTM LP." (*Id.* ¶¶ 20, 76). In 2018, Berberi and Auerbach began operating PMTM LP

and PMTM Boston as installers of tile, marble, and terrazzo. (*Id.* ¶ 33, 81).

According to the Amended Complaint, Samfet, through Berberi and Auerbach, operated

PMTM LP as a single employer. (*Id.* ¶ 33–61). For example: (i) "Berberi and Auerbach negotiated

contracts with PMTM LP customers in New York as Samfet officials, using their Samfet emails

---

[5] Berberi and Auerbach own PMTM LP through their partnership interest in NYC Marble GP and NYC Marble LP. (Am. Compl. ¶ 32).

for such negotiations" (*id.* ¶ 35); (ii) Samfet advertises PMTM LP's work on certain construction sites and projects as its own work on the Samfet website (*id.* ¶¶ 37–42); (iii) Berberi and Auerbach had "centralized control over the labor relations for Samfet and PMTM LP" (*id.* ¶ 44), with Berberi and Auerbach "me[e]t[ing] on behalf of PMTM LP to resolve issues with labor organizations, including [the Funds] and their affiliated labor unions" (*id.* ¶ 49); and (iv) Berberi and Auerbach had the authority to hire and fire Samfet and PMTM LP employees and set the conditions of their employment, including wages and benefits for employees at Samfet and PMTM LP (*id.* ¶¶ 45–48).

The Amended Complaint further alleges that Samfet, through Berberi and Auerbach, operated PMTM LP with substantially continuous operations from PMTM Corp. (*Id.* at 8–12). For example: (i) "PMTM LP's work included work on PMTM Corp.'s preexisting projects" (*id.* ¶ 34); (ii) following the asset sale, "PMTM LP operated from the same location as where PMTM Corp. operated in the Bronx, New York" (*id.* ¶ 50); (iii) PMTM LP has held itself out as a continuation of PMTM Corp., for example on PMTM LP's LinkedIn page (*id.* ¶ 52); and (iv) "PMTM LP hires labor from the same labor organizations as PMTM Corp. and, as a result, shares many of the same employees as PMTM Corp" (*id.* ¶ 53–57).

In addition, the Amended Complaint alleges that Samfet, through Berberi and Auerbach, operate PMTM Boston and PMTM LP as a single employer. (*Id.* ¶ 76–85). For example: (i) "PMTM Boston is operated by the same managers and supervisors as Samfet and PMTM LP []" (*id.* ¶ 80), and "shares employees with Samfet and PMTM LP" (*id.* ¶ 83); (ii) "PMTM Boston shares the same customers with Samfet and PMTM LP" (*id.* ¶ 84); and (iii) "PMTM Boston frequently engages in financial transactions with Samfet and PMTM LP" (*id.* ¶ 82).

III.    Procedural History

The Funds commenced this action against Samfet, NYC Marble LP, NYC Marble GP, PMTM Boston, Berberi, and Auerbach on February 4, 2022 (ECF No. 1), seeking to impose alter-ego/successor/single-employer liability for violations of ERISA and LMRA (Am. Compl. ¶¶ 93–105), as well as piercing the corporate veil under New York law (*id.* ¶¶ 106–11). As in the Collection Action, here, the Funds allege that audits of PMTM Corp.'s and PMTM LP's books and records revealed millions of dollars in delinquent benefit contributions. (*Id.* ¶¶ 67–70, 74). In this action, however, the Funds allege that the Defendants (rather than PMTM Corp. and PMTM LP) are liable for the delinquent benefit contributions. (*Id.* ¶ 75). Plaintiffs assert that the audit of PMTM Corp. revealed that PMTM Corp.

> owes [the Funds] the sum of $304,135.36, representing a total delinquency to the Local 7 Tile Funds of $253,253.07, consisting of delinquent benefit contributions of $168,947.56, interest thereon of $49,037.40, liquidated damages of $29,508.11, and audit costs of $5,760.04, and a total delinquency to the Local 7 Marble Funds of $50,882.29, consisting of delinquent benefit contributions of $32,908.98, interest thereon of $6,512.59, liquidated damages of $6,581.62, and audit costs of $4,880.

(*Id.* ¶ 71). Plaintiffs assert that the audit of PMTM LP revealed that PMTM LP

> owes [the Funds] the sum of $3,271,938.43, representing a total delinquency to the Local 7 Tile Funds of $1,140,330.15, consisting of delinquent benefit contributions of $885,423.78, interest thereon of $72,701.61, liquidated damages of $177,084.76, and audit costs of $5,120, a total delinquency owed to the Local 7 Marble Funds of $1,920,622.00, consisting of delinquent benefit contributions of $1,487,833.48, interest thereon of $96,196.31, liquidated damages of $297,576.70, and audit costs of $5,200, and a total delinquency to the Local 7 Terrazzo Funds of $81,382.61, representing delinquent contributions of $63,077.55, interest thereon of $4,809.55, liquidated damages of $12,615.51, and audit costs of $880.

(*Id.* ¶ 72). In total, the Funds allege that "PMTM Corp. and PMTM LP owe [the Funds] the sum of $3,576,073.79, plus the Funds' attorneys' fees and costs incurred in collecting said sums." (*Id.* ¶ 74). The Funds allege that "[b]ecause Samfet, Defendant NYC Marble GP, Defendant NYC Marble LP, and PMTM LP are a single employer and a successor of PMTM Corp., they are joint

[sic] and severally liable to [the Funds] in the amount to $3,576,073.79, plus the Funds' attorneys' fees and costs incurred in collecting said sums." (*Id.* ¶ 75).

On March 1, 2022, Defendants waived service of the Summons and Complaint pursuant to Federal Rule of Civil Procedure 4(d). (ECF No. 11).[6] On May 6, 2022, Defendants requested that the Court hold a pre-motion conference on its anticipated motion to dismiss the suit under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 16). After the Funds responded (ECF No. 17), Your Honor granted Defendants' request and held a pre-motion conference on June 16, 2022 (ECF No. 18). On August 4, 2022, Defendants filed the fully briefed Motion to Dismiss. (Def's Mot. to Dismiss; ECF No. 26 ("Def's Mot. to Dismiss Memo."); Pl's Opp.; ECF Nos. 28–29 ("Def's Reply")).

In August 2022, PMTM LP's Chapter 7 trustee and representative of the bankruptcy estate, Alan Nisselson (the "Bankruptcy Trustee"), commenced an adversary proceeding against the Funds, plaintiffs here, seeking to enjoin this action on the grounds that the Funds' claims belong to PMTM LP's bankruptcy estate. (*Nisselson v. Marjerry Realty Corp. (In re Port Morris Tile & Marble LP)*, 22-01137 (MG) (Bankr. S.D.N.Y. Aug. 18, 2022) ("Adv. Proc. Dkt.") ECF No. 1 ¶ 1). In its motion for a preliminary injunction, the Bankruptcy Trustee argued that bringing this action violated the automatic stay applicable in actions brought by creditors of a bankruptcy debtor. (Adv. Proc. Dkt. No. 4 at 7). The Funds opposed the Bankruptcy Trustee's motion, arguing that the property sought in this action is outside the bankruptcy debtor's estate, and is therefore outside the scope of the automatic stay and injunctive relief. (Adv. Proc. Dkt. No. 7 ¶ 1).

---

[6] Although the Funds have not filed an executed summons showing proof of service of the *Amended* Complaint, Defendants have not raised objections regarding service and have timely responded to the amended pleading. Accordingly, the Court is assured that service occurred and overlooks any associated procedural deficiency.

On October 6, 2022, Chief Judge Glenn denied the Bankruptcy Trustee's motion for a preliminary injunction in the adversary proceeding, holding that the Funds' claims are not the property of the bankruptcy estate (the "Bankruptcy Order"). (Adv. Proc. Dkt. No. 14 ("Bankr. Order") at 3). In the Bankruptcy Order, Chief Judge Glenn held that the Funds' ERISA alter ego claims (i) allege harm particular to the Funds' rather than general to the bankruptcy creditors (*id.* at 13–29), and (ii) are distinct from the comparable state law claims that could be brought by the Bankruptcy Trustee (*id.* at 20–29). Chief Judge Glenn further held that the Funds' claims for piercing the corporate veil under New York law do not belong to the bankruptcy estate as those claims "are entirely between non-debtors." (*Id.* at 29–30).

On the same day, the Funds filed a letter alerting the Court to the Bankruptcy Order. (ECF No. 32). Your Honor subsequently referred the Motion to me for a report and recommendation. (Order dated 10/28/2022). On January 13, 2023, the parties requested that the Court schedule a pre-motion conference pursuant to Rule 16. (ECF No. 33). I granted that motion (Order dated 1/17/2023), and held a conference on February 21, 2023 (Order dated 2/21/2023). At that conference, I directed the parties to submit further briefing regarding the Motion to Dismiss in light of the Bankruptcy Order. (Order dated 2/21/2023). On March 14, 2023, Defendants filed additional briefing in support of the Motion to Dismiss (ECF No. 36 ("Def's Supp. Brief.")), and the Funds filed additional briefing in opposition (ECF Nos. 37–38 ("Pl's Supp. Brief.")).

## LEGAL STANDARDS

In its Motion, Defendants ask the Court to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the Funds' claims belong exclusively to PMTM LP's bankruptcy estate, and that the Funds therefore lack standing to bring the claims here. (Def's Mot. to Dismiss Memo. at 2).

## I.    Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, a court "must accept as true all well-pleaded facts alleged in the [complaint] and must draw all reasonable inferences in the non-moving party's favor." *Magnacoustics, Inc. v. Integrated Computer Sols., Inc.*, No. 17-CV-4967 (RER), 2020 WL 4041310, at *3 (E.D.N.Y. July 17, 2020) (original alterations omitted) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013)). Further, "it is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents attached to, integral to, or referred to in the complaint." *Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*, No. 13-CV-3266 (JFB) (WDW), 2014 WL 672926, at *7 n.7 (E.D.N.Y. Feb. 20, 2014) (citing *Glob. Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

## II.    Applicable Law

The Second Circuit applies federal common law, rather than state law, when evaluating liability in ERISA actions. *Ferrara v. Oakfield Leasing Inc.*, 904 F. Supp. 2d 249, 269 (E.D.N.Y.

2012) (collecting cases). And while "[t]he boundaries of the alter ego, successor, and single employer remedies are normally a question of state law," where these doctrines are used to support an ERISA claim, federal law governs. *Trustees of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. ENOBRAC Plumbing Inc.*, No. 17-CV-2846 (DLI) (SJB), 2018 WL 3635049, at *9 (E.D.N.Y. Feb. 12, 2018). Federal law also determines whether a creditor may pursue alter ego, successor, and single employer-based ERISA claims outside of a bankruptcy proceeding. *See ENOBRAC Plumbing Inc.*, 2018 WL 3635049, at *9 (citing *Many v. Fischer*, No. 96-CV-0561, 1998 WL 151023, at *1 (S.D.N.Y. Mar. 31, 1998) (adopting report and recommendation)). Courts in this Circuit have similarly held that federal law governs veil piercing theories in actions arising under ERISA. *Id.*; *see also Ferrara*, 904 F. Supp. 2d at 270 ("[P]iercing a corporate veil in an action arising under ERISA is a question of substantive law, though state law may be used as a reference guide.") (citations and quotation marks omitted).

III.    Standing

Article III standing is a "threshold question in every federal case" that "determine[s] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)). In the bankruptcy context, the question of standing may arise when creditors bring alter ego or other claims to recover from third parties to a bankruptcy proceeding. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 108 n.3 (2d Cir. 2016) (citing *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 696–97 (2d Cir.1989), *disapproved of on other grounds by In re*

*Miller*, 197 B.R. 810 (W.D.N.C. 1996)). In those cases, the suing creditors must demonstrate "an injury other than the one redressable under the [Bankruptcy] Code only by the trustee." *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d at 108 n.3. In other words, "the trustee has exclusive authority to initiate lawsuits on behalf of the estate" and "creditors do not have authority, and thus no standing, to bring lawsuits that are properly brought by a bankruptcy trustee." *ENOBRAC Plumbing Inc.*, 2018 WL 3635049, at *7. Courts in the Second Circuit have determined that while "derivative" or "general" alter ego claims may be brought only by the bankruptcy trustee, "particularized" alter ego claims may be brought by individual creditors. *See In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 89 (2d Cir. 2014). Where "general" alter ego claims allege injury applicable to all bankruptcy creditors, "particularized" alter ego claims allege injury applicable only to an individual set of creditors. *See id.*

## DISCUSSION

Defendants argue that the Funds lack standing to bring the ERISA alter ego and veil piercing claims and must be dismissed accordingly. (*See* Def's Mot. to Dismiss Memo. at 2–12; Def's Supp. Brief. at 4–6). With respect to the ERISA alter ego claims, Defendants argue that these claims are generally available to all creditors, and therefore fall within the bankruptcy estate and may not be brought by the Funds. (*See id.*). Defendants assert that the same is true of the Funds' veil piercing claims. (*See* Def's Mot. to Dismiss Memo. at 8–12; Def's Reply at 7–9). In contrast, the Funds argue that their ERISA alter ego claims are particularized in that they allege wrongdoing and injury that is specific to the parties in this action. (*See* Pl's Opp. at 11–18). With respect to the veil piercing claims, the Funds agree with Chief Judge Glenn's conclusion that the veil piercing claims are not the property of the bankruptcy estate and thus that the Funds have adequate standing. (*See* Pl's Opp. at 18–20). After reviewing the Funds' allegations regarding the alter ego relationship

between Defendants and PMTM LP, the Court finds that the Funds have adequately pled a sufficiently particularized injury to confer upon them standing to bring these claims. In addition, the Court agrees with Chief Judge Glenn's reasoning that because the Funds' veil piercing claims are entirely between non-debtors, those claims are likewise outside the scope of the bankruptcy estate.

I.    The ERISA Alter Ego Claims Are Particular Rather Than General

"The relevant question" when determining whether claims are general or particular "is whether Plaintiffs' alter ego or successorship claims could be made by other creditors, which requires an examination of the allegations supporting the claims." *Labarbera v. United Crane & Rigging Servs., Inc.*, No. 08-CV-3274 (DLI) (ALC), 2011 WL 1303146, at *6 (E.D.N.Y. Mar. 2, 2011). Because the conduct and harm underlying the Funds' claims is specific to the Funds, and because the ERISA alter ego liability standard differs in material ways from state law standards, the Funds' claims are particular. The court addresses each of these reasons in turn.

A.    The Wrongdoing and Harm Alleged Are Particular to These Parties

Claims are particular, and thus may be asserted by individual creditors outside of the bankruptcy, where "the conduct that supports claim is the same conduct that directly harmed the creditor in the underlying cause of action." *Id.* at *7. For example, claims are particular where "ERISA injury [i]s predicated upon individualized dealings and interactions with the alter ego defendants." *Id.* at *7 (discussing *Trustees of the Bricklayers Local 7 Pension Trust v. Stileitaliano International*, 2004 WL 1774223, *4 (N.D. Cal. Aug. 6, 2004)). On the other hand, claims are general, and thus may not be brought by individual creditors, where "the allegations in support of the alter ego claim are not associated with the underlying harm for which plaintiffs seek damages"

or where "the allegations supporting the claim were suffered by all other creditors." *Labarbera*, 2011 WL 1303146, at *7–8.

Plaintiffs have adequately pled a sufficiently particularized injury to establish standing to bring these claims. Injury is particularized where it can be "directly traced to [the third party's] conduct." *St. Paul Fire & Marine Ins. Co.*, 884 F.2d at 704. The Funds' allegations of particularized injury here are analogous to those in *Trustees of the Bricklayers Local 7 Pension Trust v. Stileitaliano International*, 2004 WL 1774223, *4 (N.D. Cal. Aug. 6, 2004). There, plaintiffs alleged that the alter ego defendants and bankruptcy debtor agreed to take actions, such as diverting work and undercapitalizing the bankruptcy debtor, for the sole purpose of avoiding paying ERISA contributions. *Id.* The court found that "the allegations, along with other factors averred by Plaintiffs, adequately state[d] a claim for a 'particularized' alter ego harm." *Id.* at *5. The *Stileitaliano International* court further noted that the injury alleged was not general to all creditors. *Id.* "Rather, Plaintiffs [alleged] that they were injured in a way that other creditors of [the bankruptcy debtor] were not; in fact, they [alleged] that [the bankruptcy debtor's] undercapitalization was achieved specifically to avoid financial obligations to Plaintiffs." *Id; see also Variable–Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 607–08 (S.D.N.Y.1996) (plaintiff asserted an individualized alter ego claim against director and president of bankrupt company because it alleged that he had participated "directly and actively" in infringing its patent).

Similarly here, the Funds allege that Berberi and Auerbach, "while using their common control and dominion over the Corporate Defendants and [PMTM LP]," shifted PMTM LP's operations and receivables to Samfet and PMTM Boston for the direct purpose of "evading [PMTM LP's] more than $3 million dollar obligation to Plaintiffs arising from" the delinquent benefit

contributions owed to the Funds. (Am. Compl. ¶ 9, 88). The Funds specifically allege that this conduct occurred on or around April 6, 2021, while the Collection Action seeking the contributions was ongoing. (*Id.* ¶ 88). In sum, the Funds inability to recover benefit contributions thus far is alleged to be injury that is a direct result of the actions taken by Defendants.

Not all ERISA alter ego claims are alike. Defendants specifically point to several cases in this Circuit in which plaintiffs lacked standing because the ERISA alter ego claims alleged were found to be general to all creditors. (Def's Supp. Brief. at 4–6). However, the factual allegations in those cases differ in significant ways from those in the present case. With respect to *ENOBRAC Plumbing Inc.*, Judge Bulsara specifically noted that plaintiffs there "[did] not allege that Enobrac took particularized action against them in comingling assets and operations with [the bankruptcy debtor]." 2018 WL 3635049, at *12. Rather, the alter ego allegations affected all creditors. *Id.* Similarly, with respect to *Labarbera*, Judge Irizarry noted that plaintiffs there "[did] not allege[] that [the defendant] directed [the bankruptcy debtor's] refusal to pay contributions or that [the defendant] took action to render [the bankruptcy debtor] insolvent for the purpose of avoiding ERISA contributions." 2011 WL 1303146, at *8. The *Labarbera* court further distinguished plaintiffs' general claims from the particularized alter ego liability alleged in *Stileitaliano*. *Id.* at *7.[7]

Here, the Funds specifically allege that Defendants shifted operations away from PMTM LP and forced it into insolvency in order to avoid payments to the Funds in the Collection Action. (*See* Pl's Opp. at 3–4; *see also* Am. Compl. ¶¶ 88–90). As Chief Judge Glenn noted,

---

[7] Defendants also point to *Many v. Fischer*, in which the court found that ERISA alter ego claims were general and resulted in no particularized injury to plaintiffs. No. 96 Civ. 0561 (KMW), 1998 WL 151023, at *2 (S.D.N.Y. Mar. 31, 1998). Even in *Maney*, however, the court referenced case law noting that plaintiffs could theoretically establish standing to sue if they show injury that could be "'directly traced to the alter ego's conduct.'" *Id.* (quoting *Holcomb v. Pilot Freight Carriers, Inc.*, 120 B.R. 35, 42 (M.D.N.C. 1990)).

> [w]hile it may be the case that failures to remit payments originated with [PMTM LP] in the first instance, the Fund[s] make[] allegations regarding the Corporate Defendants' conduct with respect to [PMTM LP] and involvement in actions to avoid remitting payment that create independent liability for the Corporate Defendants under the ERISA statute.

(Bankr. Order at 27). These allegations describe "particularized action" by Defendants that was lacking in both *ENOBRAC Plumbing Inc.* and *Labarbera.*[8] Therefore, the Funds have properly alleged particularized conduct and injury.

B. <u>The ERISA Claims Are Distinct from State Law Alter Ego Claims That the Bankruptcy Trustee Could Bring</u>

Courts in this Circuit will also look to the similarities and differences between the individual creditors' claims and any comparable potential claim that bankruptcy creditors may bring. *See In re Tronox Inc.*, 855 F.3d 84, 103–104, 104 n.24 (2d Cir. 2017). Where the two sets of claims align, the individual creditors' claims may be considered general, and thus "the common subject of creditors' claims to return assets to the bankruptcy estate." (Bankr. Order at 22). Where there are "differences in the substantive law underlying creditors' claims against third parties," claims may be considered particular. (*Id.* at 24 (discussing *In re Tronox Inc.*, 855 F.3d 84 at 104 n.24)).

In this context, the Court first agrees with Chief Judge Glenn's determination that the Bankruptcy Trustee may not "step into the shoes of the Fund Group to bring the ERISA claim under the ERISA statute and federal common law" (Bankr. Order at 15), as the Bankruptcy Trustee's "proper task 'is simply to collect and reduce to money the property of the estates for which (he is trustee).'" *See In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 67 (2d Cir. 2013)

---

[8] Notably, the court in *ENOBRAC Plumbing Inc.* described plaintiffs' claims as a "poorly disguised effort to avoid the bankruptcy stay," in part because plaintiffs offered no explanation of why they had standing to file the lawsuit. 2018 WL 3635049, at *15. In doing so, the court stated that "[h]ad the bankruptcy court determined that the stay did not apply to Enobrac, then the Fund Trustees could have proceeded with this lawsuit." *Id.* Here, the bankruptcy court expressly determined that the Funds' claims did not fall within the bankruptcy estate and thus that the stay did not apply. (Bankr. Order at 17).

(quoting *Caplin v. Marine Midland Grace Tr. Co.*, 406 U.S. 416, 428–29 (1972)). "[N]owhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties" on behalf of creditors. *Caplin*, 406 U.S. at 428. The Court finds that "the Fund[s] [] (rather than estate creditors) hold[] the equitable interest in any diverted ERISA funds" (Bankr. Order at 17), and thus that the Bankruptcy Trustee may not bring claims under ERISA.

Without availing itself of ERISA, the Bankruptcy Trustee may still conceivably bring a claim for alter ego liability under state law. Therefore, the relevant inquiry is whether the "legal showing necessary [for the Funds] to prove ERISA alter ego liability is different from the legal showing the trustee would need to make for alter ego liability under state law." (Bankr. Order at 21); *Lowen v. Tower Asset Management*, 829 F.2d 1209, 1220 (2d Cir. 1987) ("In determining whether to disregard the corporate form, we must consider the importance of the use of that form in the federal statutory scheme, an inquiry that generally gives less deference to the corporate form than does the strict alter ego doctrine of state law.") (citations omitted). The Court, along with Chief Judge Glenn, responds to this inquiry in the affirmative.

In determining that the legal showings necessary to establish federal and state law liability in fact differ, Chief Judge Glenn compared the ERISA alter ego liability standard to the New York alter ego liability standard, which he posited would govern the Bankruptcy Trustee's potential claims. (Bankr. Order at 22–25). Chief Judge Glenn reasoned that establishing alter ego liability under New York law is more difficult than establishing alter ego liability under ERISA, and therefore the ERISA claims in this action are particular to the Funds. (*Id.* ("[A]s the Second Circuit observed in *Lowen*, the ERISA alter ego legal standard is not just distinct from state law alter ego standards—*it is less exacting*.") (emphasis added)). In other words, "there is likely a range of

17

factual harms that are actionable under an ERISA alter ego theory but not actionable under a New York alter ego theory." (*Id.* at 22). For example, ERISA may impose alter ego or veil piercing liability even where no wrongful conduct on the part of the defendant is demonstrated, whereas New York law requires a showing of wrongful conduct. (*See id.* (citing *Ferrara*, 904 F. Supp. 2d at 270)).

Disagreeing with Chief Judge Glenn's reasoning, Defendants argue that Delaware, rather than New York, law would govern the Bankruptcy Trustee's potential claims (*see* Def's Supp. Brief. at 10–11), as "[t]he law of the state of incorporation determines when the corporate form will be disregarded." *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993). In doing so, Defendants seek to show that the ERISA and Delaware alter ego liability standards are on equal footing, with neither being more or less exacting. (Def's Supp. Brief. at 10–11). But Defendants are mistaken. In reality, "[p]ersuading a Delaware court to disregard the corporate entity is a difficult task." *Yu v. GSM Nation, LLC*, No. CV 12293-VCMR, 2017 WL 2889515, at *3 (Del. Ch. July 7, 2017) (quoting *Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (quotation marks omitted)). Establishing liability under an alter ego theory using Delaware requires allegations of "fraud or similar injustice," in other words, that "the corporation [is] a sham and exist for no other purpose than as a vehicle for fraud." *Id.* "Mere dominion and control of the parent over the subsidiary will not support alter ego liability." *SARN Energy LLC v. Tatra Defence Vehicle as*, No. CV N17C-06-355 (EMD) (CCLD), 2018 WL 5794599, at *6 (Del. Super. Ct. Nov. 5, 2018) (quoting *Outokumpu Engr. Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. 1996)) (quotation marks omitted). "Rather, [t]he degree of control required is exclusive domination and contract ... to the point that

18

[the subsidiary] no longer ha[s] legal or independent significance of [its] own." *Id.* (quoting *Outokumpu Engr. Enterprises, Inc.*, 685 A.2d at 729 n. 2) (internal quotation marks omitted)).

Delaware's alter ego standard is thus markedly different than the federal alter ego standard under ERISA, which primarily requires a showing of "disregard of the corporate form." *McGuinness v. Marvin Hammerman, Inc.*, No. 89 CIV. 2900 (KMW), 1994 WL 172403, at *3 (S.D.N.Y. May 4, 1994). ERISA alter ego liability does not require a showing of wrongful intent, *see Ferrara*, 904 F. Supp. 2d 249 at 270, or a showing that an entity is a vehicle for fraud and has no independent legal significance of its own, *see Salgo v. New York Concrete Corp.*, 447 F. Supp. 3d 136, 144 (S.D.N.Y. 2020) (ERISA alter ego liability also "applies to situations where the companies are parallel companies"). Thus, whether Delaware or New York law would apply to the Bankruptcy Trustee's potential alter ego claims, both states impose a more demanding standard than the one contemplated under ERISA and federal common law. These differences further persuade the Court that the Funds' alter ego claims are particular and distinct from any claims that could be brought by bankruptcy creditors.

II.    The Veil Piercing Claim is Asserted Against Non-Bankruptcy Debtor Defendants

The Funds bring a second claim against Defendants for piercing the corporate veil under New York law. (Am. Compl. ¶¶ 106–11). In doing so, the Funds seek to show that the Individual Defendants operated the Corporate Defendants "in such a manner that warrants the piercing of the corporate veil among Defendants, resulting in joint and several liability to Defendants arising from the" ERISA alter ego liability. (*Id.* ¶ 111). The veil piercing claims are not asserted against PMTM LP.

To pierce the corporate veil under an alter ego theory, "a plaintiff must prove (1) that the person or entity sought to be held liable on said theory 'exercised complete domination over the

corporation with respect to the transaction at issue and (2) that such domination was used to commit a fraud or wrong that injured . . . the party seeking to pierce the veil.'" *Two Kids From Queens, Inc. v. J & S Kidswear, Inc.*, No. 09-3690 (DRH) (AKT), 2010 WL 475319, at *2 (E.D.N.Y. Feb. 8, 2010) (quoting *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x. 195, 197 (2d Cir. 2005)). Plaintiffs adequately plead factual allegations to support the veil piercing claims, which Defendants does not appear to dispute. Rather, Defendants argue that the veil piercing claims are not particular, and therefore are the property of the bankruptcy estate. (Def's Reply at 7–9).

It is true that claims for piercing the corporate veil asserted against the bankruptcy debtor itself may be considered property of the bankruptcy estate. *See In re Keene Corp.*, 164 B.R. 844, 851–52 (Bankr. S.D.N.Y. 1994) (holding that state law veil-piercing claims are generally available to the bankruptcy trustee). Here, however, "the veil piercing claims are entirely between non-debtors." (Bankr. Order at 30). In other words, the Funds seek to pierce the corporate veil among Berberi, Auerbach, and the Corporate Defendants for wrongful conduct used to withhold benefit contributions. (Am. Compl. ¶ 111). These claims do not seek to pierce through to PMTM LP, and thus cannot be the subject of the bankruptcy estate. As Chief Judge Glenn noted,

> [t]o the extent the Fund Group seeks to pierce the corporate veil of [PMTM LP] under state law to reach any of these Defendants, that claim would fall squarely within the category of claims that the [Bankruptcy] Trustee is entitled to bring itself on behalf of a debtor.

(Bankr. Order at 30). Therefore, the Court agrees that it need not consider whether the veil piercing claims are general or particular, and that the Funds have established their standing accordingly.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Your Honor deny Defendants' Motion to Dismiss.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Diane Gujarati within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).

**RESPECTFULLY RECOMMENDED.**

**/s/ Ramon E. Reyes, Jr.**
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: May 8, 2023
Brooklyn, NY